1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2
   BRIAN STRETCH (CSBN 163973)
3  Chief, Criminal Division

4  DENISE MARIE BARTON (MABN 634052)
   Assistant United States Attorney
5
     450 Golden Gate Avenue, Box 36055
6    San Francisco, California 94102
     Telephone: (415) 436-7359
7    Facsimile: (415) 436-7234
     denise.barton@usdoj.gov
8
   Attorneys for Plaintiff
9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                        SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,        )   CR No. 07-0310 MHP
                                     )
15         Plaintiff,                )   MEMORANDUM IN OPPOSITION TO
                                     )   DEFENDANT'S MOTION TO SUPPRESS
16      v.                           )
                                     )
17  ORVELLE ROBINSON,                )
                                     )
18         Defendant.                )
                                     )
19

20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS- CR 07-0310 MHP

TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A. Police Respond to and Investigate a Shooting on Gilman Avenue.. . . . . . . . . . . . . . . . 1
     B. Police Obtain a Search Warrant For 2914 Griffith Street... . . . . . . . . . . . . . . . . . . . . . 3

III.    DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     A. The Hearing Allowed Under *Franks v. Delaware* Is To Be Used In Exceptional
        Circumstances That Are Not Present Here.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        1. The Defendant Has Not Made the Requisite Showing That The False Statement Was
           Made Deliberately or Recklessly.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2. The Defendant Has Not Made the Requisite Showing That The False Statement Was
           Necessary to a Finding of Probable Cause.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     B. Police Had Authority to Collect and Inspect the Defendant's Jacket Without A
        Warrant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        1. The Narcotics Were Discovered In the Course of Police Response to an
           Emergency and Are Admissible Pursuant to the Emergency Doctrine.. . . . . . . . 8
        2. The Narcotics Were Discovered Pursuant to a Lawful Inventory Search. . . . . . . 9
        3. The Narcotics Were In Plain View. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     C. Officer Benzinger's Affidavit Set Forth Ample Probable Cause That the Evidence Sought
        Would Be Located at 2914 Griffith Street.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     D. The Evidence Obtained During the Search of 2914 Griffith Street Should Not Be
        Suppressed Because The Officers Acted in Good Faith. . . . . . . . . . . . . . . . . . . . . . . 13

IV.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

TABLE OF AUTHORITIES

**FEDERAL CASES** **PAGE**

*Cady v. Dombroski*, 413 U.S. 433 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Colorado v. Bertine*, 479 U.S. 367 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Frank v. Delaware*, 438 U.S. 154 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

*Horton v. California*, 496 U.S. 128 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Illinois v. Lafayette*, 462 U.S. 640 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Massachusetts v. Shepard*, 468 U.S. 981 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Michigan v. Tyler*, 436 U.S. 499 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mincey v. Arizona*, 437 U.S. 385 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 11

*Roe v. Sherry*, 91 F.3d 1270 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*South Dakota v. Opperman*, 428 U.S. 364 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Angulo-Lopez*, 791 F.2d 1394 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Burnes*, 816 F.2d 1354 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Cervantes*, 219 F.3d 882 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*United States v. Chavez-Miranda*, 306 F.3d 973 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Chesher*, 678 F.2d 1353 (9th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United State v. Celestine*, 324 F.3d 1095 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Dicesare*, 765 F.2d 890 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Ewain*, 88 F.3d 689 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Feldman*, 788 F.2d 544 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Fowlie*, 24 F.3d 1059 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Jordan*, 291 F.3d 1091 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Katz*, 389 U.S. 347 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Leon*, 466 U.S. 897 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*United States v. Mendonsa*, 989 F.2d 366 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*United States v. Penn*, 233 F.3d 1111 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Perdomo*, 800 F.2d 916 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. Potter*, 830 F.2d 1049 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Russell*, 436 F.3d 1086 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Stafford*, 416 F.3d 1068 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

**U.S. CONSTITUTIONS**

United States Const. Amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.  INTRODUCTION

The defendant cannot prevail on any of the three arguments he advances in support of his Motion to Suppress.  First, the defendant claims that a statement in the affidavit in support of a search warrant for the defendant's home at 2914 Griffith Street constituted a *Franks* violation.  However, the defendant fails to make the requisite, or any, showing that the statement was made deliberately or recklessly or that the statement was necessary to a finding of probable cause.  Second, the defendant alleges that the discovery of narcotics in his jacket pocket at the scene of the shooting was a Fourth Amendment violation.  In fact, the "seizure" of the narcotics was a reasonable search and fell within well-established exceptions to the warrant requirement.  Third, the defendant claims that there was insufficient facts in the warrant for the judge issuing the warrant to find that the sought after evidence would be located at 2914 Griffith Avenue.  In fact, the affidavit contained ample factual statements detailing the connection between the defendant and the location to be searched.  Accordingly, this Court should deny the defendant's Motion to Suppress on all grounds.

II.  STATEMENT OF FACTS

   A.  Police Respond to and Investigate a Shooting on Gilman Avenue.

On February 19, 2007, San Francisco police officers were dispatched to Gilman Avenue in the Bayview neighborhood of San Francisco, California for a report of shots fired.  Upon arrival, police discovered two victims.  Inside 1326 Gilman Avenue, police discovered John Donaldson, a victim of gunshot wounds.  Witnesses advised that they had seen Donaldson in front of the house; that they had heard gun shots; and that Donaldson then came into the house, told them that he had been shot, and fell to the floor.  *Exhibit A to Barton Declaration, ORBN0066*.  Donaldson later died of his wounds.  *Exhibit A to Barton Declaration, ORBN0067*.  Down the block, in front of 1282 Gilman Avenue, police found the second victim, the defendant, Orvelle Robinson,.  *Exhibit A to Barton Declaration, ORBN0066.*

The defendant was first observed on Gilman Avenue by private security officers ducking between cars.  When the security officers stopped to investigate, the defendant told them that he

had been shot. *Exhibit E to Barton Declaration, ORBN0132*. To render aid, the private security officers and paramedics removed the defendant's jacket and cut off a white t-shirt. *Exhibit E to Barton Declaration, ORBN0132; Exhibit F to Barton Declaration, ORBN0136-37* . One of the private security officers recalled that the defendant repeatedly said that he was worried about his wife at his house and thought that whoever shot him would go to his house and hurt his wife. *Exhibit E to Barton Declaration, ORBN0132*. When police encountered the defendant, he was being treated by private security officers. *Exhibit C to Barton Declaration, ORBN0072; Exhibit B to Barton Declaration, ORBN0071*. Robinson was transported to the hospital. Officer Trubin accompanied him in the ambulance. *Exhibit C to Barton Declaration, ORBN0072*. En route to the hospital, the defendant asked Officer Trubin, "Is there someone there at my house, with my wife. Someone may go there. I told you the address ten times." According to Officer Trubin, the defendant had previously mentioned the address 2914 Griffith Street. The defendant repeated his request to go to his house multiple times. *Exhibit C to Barton Declaration, ORBN0071*. At the hospital, Officer Luedtke received the defendant's clothing from emergency room personnel. *Luedtke Declaration, ¶ 3*. Inside the defendant's wallet, Office Luedtke found what he believe to be a card issued to federal parolees, leading him to believe that the defendant was on federal probation. He then relayed this information to his sergeant. *Luedtke Declaration, ¶ 4*.

   As stated in the police report, "numerous units responded to the scene to search for crime scenes, other victims, evidence, and suspects." *Exhibit A to Barton Declaration, ORBN0066.* In the course of the investigation, police searched the area for evidence, finding a hand gun, blood trails, shell casings, and bullet fragments. *Exhibit A to Barton Declaration, ORBN0066; Exhibit B to Barton Declaration, ORBN0071*. As part of the investigation, the police also collected the clothing that Donaldson had been wearing at the time of the shooting and the bullet that was removed from his body. *Exhibit A to Barton Declaration, ORBN0067*. All of these items, along with the car in which Donaldson and the defendant were seated when the shooting began, were collected and held as evidence. *Exhibit A to Barton Declaration, ORBN0064-65, 67*.

   Officer Primiano was assigned to the area where the clothing of the then-victim, the

MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS- CR 07-0310 MHP

1  defendant, was located.  The clothing was on the sidewalk of the crime scene.  *Exhibit D to*
2  *Barton Declaration, ORBN0068.*  At the direction of her sergeant, Officer Primiano searched the
3  jacket that Robinson had been wearing when he was shot for identification or keys.  In her
4  search, she discovered suspected narcotics, that are at issue in this Motion to Suppress.  *Exhibit*
5  *D to Barton Declaration, ORBN0068*; *Exhibit A to Barton Declaration, ORBN0067.*

   B.   Police Obtain a Search Warrant For 2914 Griffith Street.

On February 22, 2007, Judge Mary Morgan of the San Francisco Superior Court issued a search warrant authorizing the search of 2914 Griffith Street, San Francisco, CA for, *inter alia*, evidence of narcotics, including firearms and ammunition.  *Benzinger Affidavit and Search Warrant, Exhibit A to Rotwein Declaration*.  With respect to probable cause that the narcotics and firearms would be located at the address, Officer Benzinger stated, *inter alia*:

- that ammunition had fallen out of the defendant's pants while he was being treated the hospital;
- that the defendant had been convicted of armed bank robbery and controlled substance offenses and was therefore prohibited from possessing ammunition;
- that a gun had been found near the area of the shooting;
- that persons who illegally possess ammunition often have more at their house;
- that 13.32 grams of cocaine salt had been found in the defendant's jacket at the scene of the shooting;
- that based on his experience, he believed that the 13.32 grams of cocaine were possessed by the defendant for sale; and
- that based on his experience, he knew that drug dealers often possess firearms to protect themselves, and to shoot rivals.

*Benzinger Affidavit and Search Warrant, Exhibit A to Rotwein Declaration*, at ORBN0040-41. Officer Benzinger also detail the reasons he believed, based on his training and experience, that narcotics and firearms would be found at the location.   Regarding probable cause that the defendant resided at 2914 Griffith Street, in his Affidavit, Officer Benzinger made the following representations:

MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS- CR 07-0310 MHP
3

- "At the hospital, Robinson told several officers to check on his wife at 2914 Griffith Street, saying that 'Someone may go there.'"

- Upon checking the DMV records, Officer Benzinger determined that the defendant had three cars registered to him with an address of 2914 Griffith Street.

- The vehicles registered to the defendant were also registered in the name of Sarah Quarles. According to the DMV records, Quarles lived at 2914 Griffith Street.

- On February 22, 2007, one of the vehicles registered to the defendant and Quarles was parked in front of 2914 Griffith Street.

*Benzinger Affidavit and Search Warrant, Exhibit A to Rotwein Declaration*, at ORBN0040. In one sentence of the three page affidavit, Officer Benzinger stated that "Robinson is on federal probation, and is not likely to give his real address to the government, since he is subject to search by his federal probation officer." *Benzinger Affidavit and Search Warrant, Exhibit A to Rotwein Declaration*, at ORBN0041. The government acknowledges that it was later determined that the defendant was not on federal probation.

### III.   DISCUSSION

A. The Hearing Allowed Under *Franks v. Delaware* Is To Be Used In Exceptional Circumstances That Are Not Present Here.

The defendant has not made the requisite threshold showing that is necessary before a hearing may be held on the sufficiency of the warrant obtained by Officer Benzinger. The Supreme Court's decision in *Franks v. Delaware* established a two-prong test for challenging the sufficiency of a warrant affidavit. 438 U.S. at 155-56. The Ninth Circuit has broken these prongs out into five requirements that must be satisfied before a *Franks* hearing is warranted:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false;
>
> (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made;
>
> (3) a detailed offer of proof, including affidavits, must accompany the allegations;
>
> (4) the veracity of only the affiant must be challenged;

1           (5) the challenged statements must be necessary to find probable cause.
2  *United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir. 1986) (citing *United States v. Dicesare*,
3  765 F.2d 890, 895 (9th Cir. 1985)).  The defendant bears the burden of proof and must make a
4  "substantial showing" to be entitled to a hearing.  *See United States v. Chavez-Miranda*, 306
5  F.3d 973, 979 (9th Cir. 2002).
6        The Supreme Court was careful to limit its decision in *Franks* so that hearings would not
7  become "commonplace" because they are not  "obtainable on a bare allegation of bad faith."
8  *United States v. Chesher*, 678 F.2d 1353, 1360 (9th Cir. 1982).  Merely negligent false statements
9  or omissions do not rise to the level of a *Franks* violation.  *See, e.g, United States v. Potter*, 830
10 F.2d 1049, 1052 (9th Cir. 1987).  Instead, "[t]here is . . . a presumption of validity with respect to
11 the affidavit supporting the . . . warrant."  *Franks*, 438 U.S. at 171; *see also United States v.*
12 *Burnes*, 816 F.2d 1354, 1357 (9th Cir. 1987) ("'In doubtful cases, preference should be given to
13 the validity of the warrant.'") (quoting *United States v. McQuisten*, 795 F.2d 858, 861 (9th Cir.
14 1986)).  *Franks* hearings are not permissible "for purposes of discovery or obstruction" but must
15 be reserved for instances where there are serious and documented concerns regarding the
16 affiant's intentional, and not merely negligent, truthfulness.  *Id*. at 170.
17       1.  *The Defendant Has Not Made the Requisite Showing That The False Statement Was*
18           *Made Deliberately or Recklessly.*
19       The defendant has not made any showing, and certainly not a substantial showing, that
20 intentionally false statements were recklessly or deliberately made by Officer Benzinger.  In
21 support of his *Franks* motion, the defendant claims that the statement that he was on federal
22 probation was false.  The United States acknowledges that the defendant was not, at the time of
23 the search warrant, on federal probation.  However, the defendant has not provided any offer of
24 proof – as is required by *Franks* – that this information was, or should have been, known to
25 Officer Benzinger at the time he applied for the warrant.  In support of his *Franks* motion,
26 counsel for the defendant merely states that he is "informed and believe and therefore allege[s]
27 that at the time of the shooting incident herein on February 19, 2007, Defendant was not on
28 federal or state probation as stated by Officer Benzinger in his Declaration."  *Rotwein*

*Declaration,* ¶ *2*.  The defendant thereafter extrapolates, without support, that the statement by Officer Benzinger that the defendant was on federal probation "constituted a negligently or intentionally inclusion of inaccurate information." *Memorandum of Points and Authorities in Support of Motion to Suppress Evidence Under the Fourth Amendment, p*. 4.  As *Franks* clearly provides, negligence is not sufficient.  The defendant must show by affidavit or other offer of proof that the statement regarding federal probation made by Officer Benzinger about the defendant was "deliberately or recklessly made."  United States v. Perdomo, 800 F.2d 916, 920 (9th Cir. 1986) (citing United States v. Dicesare, 765 F.2d 890, 895 (9th Cir. 1985).  Unsupported accusations that a false statement was intentionally included is not sufficient.  Franks, 438 U.S. at 171 (the defendant's attack on the warrant "must be accompanied by an offer of proof" that includes "[a]ffidavits or sworn or otherwise reliable statements of witnesses").  Although he claims that this statement was "an intention[ ] inclusion of inaccurate information," *see Memorandum of Points and Authorities in Support of Motion to Suppress Evidence Under the Fourth Amendment, p*. 4, the defendant has made no offer of proof in support of that claim. The defendant has failed to make any offer of proof that Officer Benzinger had information that the defendant was not on federal probation or had access to such information.[1]  Instead, the defendant simply contends that the Officer Benzinger's statement alone is proof of an intentional or reckless inclusion of a false statement.  A mere assertion is not sufficient under *Franks*.  See Franks, 438 U.S. at 171.  Therefore, the defendant's Motion for a *Franks* hearing should be denied.

   2. *The Defendant Has Not Made the Requisite Showing That The False Statement Was Necessary to a Finding of Probable Cause*.

The objectionable statement that is the basis for the defendant's *Franks* Motion is contained in one sentence of Officer Benzinger's three page affidavit.  Officer Benzinger stated

---

[1] Moreover, Officer Luedtke's statement in his Declaration that based on his viewing of what appeared to be a Bureau of Prisons card, he believed that the defendant was on probation is consistent with Officer Benzinger's statement.  See *Luedtke Declaration,* ¶ *4*.

MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS- CR 07-0310 MHP

1 that

2     "Robinson is on federal probation, and is not likely to give his real address to
3     the government, since he is subject to search by his federal probation officer."

*Benzinger Affidavit and Search Warrant, Exhibit A to Rotwein Declaration*, at ORBN0041. In addition to demonstrating that Officer Benzinger deliberately or recklessly included a false statement in his Affidavit, *see infra* III.A.1, the defendant is required to show that "after setting aside any such misstatement ..., there would not be probable cause for the search warrant." *United States v. Jordan*, 291 F.3d 1091, 1100 (9th Cir. 2002). Even if this statement, and those relating to federal probationers are excised from the warrant, probable cause remains that evidence of narcotics and firearms would be located at 2914 Griffith Street. The references to federal probation were not necessary for a finding of probable cause. Accordingly, the defendant's Motion should be denied.

    B.  <u>Police Had Authority to Collect and Inspect the Defendant's Jacket Without A Warrant</u>

The collection and inspection of the defendant's jacket was a reasonable "search" under well-established Fourth Amendment jurisprudence. The Fourth Amendment does not forbid all warrantless searches; rather it protects against "unreasonable" searches. The Fourth Amendment provides, in part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . . *U.S. Const. Amend. IV*. Although searches conducted without a warrant are deemed to be *per se* unreasonable, there are several well-established exceptions to this presumption. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978); *United States v. Katz*, 389 U.S. 347, 357 (1967); *United States v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005). As these exceptions show, not all warrantless searches are unreasonable. In this case, the actions taken by the police were in response to the emergency at hand and the responsibilities incumbent on police officers.

///

///

1. *The Narcotics Were Discovered In the Course of Police Response to an Emergency and Are Admissible Pursuant to the Emergency Doctrine.*

Police are permitted, without a warrant, to respond to emergency situations notwithstanding a potential property interest that may be affected. *Mincey v. Arizona*, 437 U.S. 385, 392 (1978) ("We do not question the right of the police to respond to emergency situations."). The Ninth Circuit has explicitly recognized the emergency doctrine as an exception to the warrant requirement that permits police to search a otherwise protected area. *United States v. Cervantes*, 219 F.3d 882, 891 (9th Cir. 2000), *abrogated on other grounds by*, 126 S. Ct. 1943 (2006) (upholding a warrantless entry into an apartment to investigate odors of a suspected methamphetamine lab and the seizure of evidence of methamphetamine production that was in plain view). "The emergency doctrine is based on and justified by the fact that, in addition to their role as criminal investigators and law enforcers, the police also function as community caretakers." *United States v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005)(citing *United States v. Cervantes*, 219 F.3d 882, 889 (9th Cir. 2000). *See also United States v. Russell*, 436 F.3d 1086, (9th Cir. 2006) (upholding warrantless entry by police into a home from which a 911 call concerning a shooting was made). A warrantless search falls within the emergency doctrine if (1) the police have a reasonable belief that an emergency is at hand and that aid is immediately necessary; (2) the search is not primarily motivated by the desire to collect evidence; and (3) there is some reasonable basis for associating the place to be searched with the emergency. *United States v. Cervantes*, 219 F.3d at 888-890.

On February 19, 2007, the numerous police units responded to a shooting on Gilman Avenue in the Bayview neighborhood. Upon arrival, police discovered two seriously wounded men, one of whom died within hours of the shooting. The second man, the defendant, was collapsed by a car and bleeding profusely from the head, neck, and chest areas. In addition to the police, private security officers and paramedics also responded to the report of shots fired and attended to the defendant. To treat the defendant's wounds, the police and paramedics removed the defendant's t-shirt and jacket, with the defendant's assistance. *Exhibit A to Barton Declaration, ORBN0066; Exhibit B to Barton Declaration, ORBN007; Exhibit C to Barton*

*Declaration, ORBN0072;* Exhibit E *to Barton Declaration, ORBN0132;* Exhibit F *to Barton Declaration, ORBN0136-37.* When the defendant was taken from Gilman Avenue to the hospital, his jacket was left behind at the scene. Exhibit C *to Barton Declaration, ORBN0072;* Exhibit F *to Barton Declaration, ORBN0136-37.* In investigating the crime scene and in an effort to identify the defendant, Officer Primiano collected the jacket and looked inside the pockets. As reported by Officer Primiano, "Sgt Ewins #783 told me to check the pockets of Robinson's jacket for any identification or keys. While searching Robinson's jacket I found inside the left pocket a plastic baggie containing [suspected narcotics]." Exhibit C *to Barton Declaration, ORBN0068.*

It cannot be seriously disputed that the police were lawfully present on Gilman Avenue and responding to an emergency situation. The police had received a report of shots fired and upon arrival, discovered two shooting victims. The police were acting lawfully, and in their community caretaking function, when canvassing the area, attending to the defendant, and removing his jacket to render aid. *See* United States v. Stafford, 416 F.3d at 1073 (holding that warrantless entry by police into a blood-spattered apartment and seizure of evidence therein was justified by the emergency doctrine). In removing the defendant's jacket and looking inside the pocket for identification, the police were not seeking to obtain evidence against the defendant. Rather, the search for identification was a further effort to respond to the emergency at hand. Insofar as the jacket was known to belong to one of the shooting victims, the police had a more than reasonable belief that it would contain information of his identity. The events contested by the defendant fell squarely within the emergency doctrine exception to the warrant requirement. *See* United States v. Cervantes, 219 F.3d at 888-890. Accordingly, this Court should deny the defendant's Motion to Suppress the narcotics found in the defendant's jacket.

  2. *The Narcotics Were Discovered Pursuant to a Lawful Inventory Search*

Although the United States believes that the inspection of the defendant's jacket was proper under the emergency doctrine, the inspection was also proper under other well-recognized exceptions to the warrant requirement. Police are entitled, and in fact should be encouraged, to

1  inventory lawfully detained property to protect against loss or claims of theft. *South Dakota v.*
2  *Opperman*, 428 U.S. 364, 383-384 (1976) (upholding a warrantless inventory search of an
3  automobile); *United States v. Penn*, 233 F.3d 1111(9th Cir. 2000)(upholding the warrantless
4  search of an automobile and contents as a valid inventory search). Inventory searches are
5  considered to be reasonable warrantless searches because "[k]nowledge of the precise nature of
6  the property help[s] guard against claims of theft, vandalism, or negligence." *Colorado v.*
7  *Bertine*, 479 U.S. 367, 373 (1987) (upholding a warrantless search of a backpack inside an
8  impounded vehicle in which police found narcotics)
9      Inventory searches, although commonly addressed in the context of automobile searches,
10 are not limited to automobiles. In *Illinois v. Lafayette*, the defendant was arrested for disturbing
11 the peace and taken into custody. At the police station, police searched a backpack that had been
12 carried by the defendant. The Court held that it was reasonable for the police to inventory the
13 contents of possessions of a person lawfully taken into custody. Among the reasons justifying
14 the search, the Court cited verification of identification; protection of personal property; and
15 protection against false claims of theft by police. *Illinois v. Lafayette*, 462 U.S. 640, 646-47
16 (1983). *See also United States v. Feldman*, 788 F.2d 544, 553 (9th Cir. 1986) (upholding the
17 warrantless search of an automobile and closed briefcase contained therein as a valid inventory
18 search).
19     If this Court does not view the search of the jacket as subject to the emergency doctrine,
20 the search was nonetheless a reasonable warrantless inventory search. The jacket was lawfully
21 in police custody as both evidence of a crime and property of a victim. So long as the jacket was
22 properly in police custody, an inventory search was reasonable to identify the owner and catalog
23 any items contained inside the jacket. In assessing the reasonableness of the inventory search,
24 the courts have considered the expectation of privacy in the item – typically an automobile -- to
25 be searched. Courts have regularly held that a person has a lower expectation of privacy in an
26 automobile than in a house. "For purposes of the Fourth Amendment there is a constitutional
27 difference between houses and cars, a difference that may in some cases justify a warrantless
28 search." *South Dakota v. Opperman*, 428 U.S. at 383-384 (*citing and quoting Cady v.*

1  *Dombroski*, 413 U.S. 433 (1973) (quotations omitted).  If a person has a lesser expectation of
2  privacy in an automobile than a house, it is reasonable to conclude that the defendant's
3  expectation of privacy in a jacket would be equal to or lesser than the expectation of privacy in
4  an automobile.  The actions that the police took in "searching" the jacket were no more intrusive
5  than an constitutionally acceptable inventory search.
6      To the extent that the defendant contends that the police *could have* obtained a warrant to
7  search the pockets of the defendant's jacket, that argument too should fail.  Courts have long
8  noted that the mere fact that the police could have searched an article of property with a warrant
9  does not invalidate a warrantless search.  *Colorado v. Bertine*, 479 U.S. at 374.  In this case, in
10 responding to a chaotic and potentially dangerous crime scene, the police collected and inspected
11 the defendant's jacket.  This "search" falls squarely within a permissible warrantless search
12 pursuant to the emergency doctrine, or in the alternative, the inventory search exception.  For all
13 of these reasons, the defendant's Motion should be suppressed.
14
15      3.  *The Narcotics  Were In Plain View*
16      Alternatively, the "seizure" of narcotics from the jacket falls with the plain view
17 exception.  The police were lawfully present on the crime scene and investigating the shooting
18 and had the right to collect and inspect the jacket in the course of their investigation.  "[P]olice
19 may seize any evidence that is in plain view during the course of their legitimate emergency
20 activities."  *United States v. Mincey*, 437 U.S. 385, 392-93 (1978) (recognizing the right of
21 police to respond to emergency situations, make prompt warrantless searches of the area, and
22 seize any evidence that is in plain view"); *Michigan v. Tyler*, 436 U.S. 499, 510 (1978) (if the
23 police a lawfully in an area, "the warrantless seizure of evidence while inspecting the premises
24 for these purposes is also constitutional); *United States v. Ewain*, 88 F.3d 689, 694-95 (9th Cir.
25 1996) (upholding seizure of evidence discovered in the course of a search warrant).  The plain
26 view doctrine has explicitly been applied "where a police officer is not searching for evidence
27 against the accused, but nonetheless inadvertently comes across an incriminating object."
28 *Horton v. California*,  496 U.S. 128, 135 (1990).  In *Horton*, the police were searching the

1  defendant's home pursuant to a search warrant and discovered incriminating evidence that was
2  not listed in the warrant.  The Court held that this evidence was found in plain view and was
3  properly seized without a warrant.  *Horton v. California*, 496 U.S. 128, 142 (1990).  "To fall
4  within the plain view exception, two requirements must be met: the officers must be lawfully
5  searching the area where the evidence is found and the incriminatory nature of the evidence must
6  be immediately apparent."  *Roe v. Sherry*, 91 F.3d 1270, 1272 (9th Cir. 1996)
7       As set forth above, the police were responding to a serious emergency.  In addition to the
8  two wounded men, the police found blood, spent shell cases, a hand gun, and numerous other
9  items of evidentiary value, including the jacket.  The police were lawfully on-scene protecting
10 the community, attending to victims, ascertaining what had occurred, and collecting evidence of
11 the shooting.  In the course of conducting their investigation and determining the identity of one
12 of the shooting victims, the police looked inside the jacket that had been removed from one of
13 the shooting victims.  Instead of identification, the police discovered contraband narcotics, the
14 incriminating nature being immediate apparent.  The on-scene actions of the police were
15 reasonable and fall within the well-established plain view exception to the warrant requirement.
16
17       C.  Officer Benzinger's Affidavit Set Forth Ample Probable Cause That the Evidence
18           Sought Would Be Located at 2914 Griffith Street
19       Defendant also contends that there was insufficient evidence in the Affidavit to establish
20 that he lived at 2914 Griffith Street.  Presumably, the defendant contends that the Affidavit did
21 not set forth probable cause to show that the items to be searched for would be located at 2914
22 Griffith Street. An affidavit sets forth probable cause if "under the totality of the circumstances,
23 it reveals a fair probability that contraband or evidence of a crime will be found in a particular
24 place.  *United State v. Celestine*, 324 F.3d 1095, 1102 (9th Cir. 2003) (citing *Illinois v. Gates*, 462
25 U.S. 213, 238 (1983)).  As set forth above, the defendant himself advised officers that his wife
26 lived at 2914 Griffith Street. *Benzinger Affidavit and Search Warrant, Exhibit A to Rotwein*
27 *Declaration*, at ORBN0040.   It is not a huge inference for the officers to make that he resided
28 there along with his wife.  *United States v. Angulo-Lopez*, 791 F.2d 1394, (9th Cir. 1986) ("[a]

1  magistrate is entitled to draw reasonable inferences about where evidence is likely to be kept
2  ...."). In addition to the defendant's statements concerning his wife and her residing at 2914
3  Griffith Street, Officer Benzinger conducted an independent investigation to confirm where the
4  defendant resided. *Benzinger Affidavit and Search Warrant, Exhibit A to Rotwein Declaration*,
5  at ORBN0040. Officer Benzinger learned, and stated in his Affidavit, that the defendant had
6  three cars registered to him with an address of record of 2914 Griffith Street; that several of
7  these cars was also registered to a Sarah Quarles at 2914 Griffith Street; and that one of the cars
8  that was registered to the defendant and that had an address of 2914 Griffith Street was in fact,
9  parked outside 2914 Griffith Street. These facts, each taken alone and certainly under the
10 totality of the circumstances, provide probable cause that the defendant resided at 2914 Griffith
11 Street. This Court should find that under the totality of the circumstances, the Affidavit set forth
12 sufficient facts for a magistrate to find by a fair probability that the evidence sought would be
13 located at 2914 Griffith Street.

15         D.  The Evidence Obtained During the Search of 2914 Griffith Street Should Not Be
16              Suppressed Because The Officers Acted in Good Faith

17         Even if the Court finds that the warrant lacked probable cause, as drafted or "judicially
18 excises" portions of the affidavit, this Court should nonetheless deny the defendant's Motion.
19 The officers executing the warrant had a reasonable belief that the warrant was valid and acted
20 in good faith. When police act on a good faith reliance on a warrant, the evidence is admissible
21 even if the underlying warrant later is found to be invalid. *United States v. Leon*, 466 U.S. 897
22 (1984). Courts should not suppress evidence seized pursuant to a search warrant unless the
23 warrant was "so lacking in indicia of probable cause as to render official belief in its existence
24 entirely unreasonable." *United States v. Fowlie*, 24 F.3d 1059, 1067 (9th Cir. 1994). When
25 police act illegally, certainly suppression of the evidence is the appropriate remedy. *United*
26 *States v. Mendonsa*, 989 F.2d 366, 369 (9th Cir. 1993). But when a judge finds probable cause, a
27 police officer should be able to rely on the judge's finding even if the judge is wrong unless the
28 warrant so clearly lacks probable cause that it is obvious to the officer. *Massachusetts v.*

*Shepard*, 468 U.S. 981, 989 (1984); *Mendonsa*, 989 F.2d at 369.

Nothing here suggests that the police acted in bad faith. It cannot be said that a "reasonably well trained officer would have known that the search was illegal despite the [court]'s legal authorization." *Leon*, 468 U.S. at 922 n.23. Even if this Court finds that the affidavit did not set forth adequate probable cause, the good faith exception applies, and the search, and all information flowing from it, should be admissible.

### IV. CONCLUSION

The defendant's Motion should be denied on all ground. He has failed to make the threshold showing for a *Franks* hearing. Further, the police were justified under well-established exceptions to the warrant requirement to inspect the defendant's jacket and collect the narcotics discovered therein. Finally, Officer Benzinger's affidavit included specific facts demonstrating that the evidence he sought in the warrant would be located at 2914 Griffith Street. Accordingly, for the reasons set forth above and those to be stated at a hearing on this Motion, the defendant's Motion to Suppress should be denied.

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

DATED: January 10, 2007            _____/s/_____
                                    DENISE MARIE BARTON
                                    Assistant United States Attorney