1  GEOFFREY ROTWEIN (CA SBN 58176)
   LAW OFFICES OF GEOFFREY ROTWEIN
2  400 Montgomery Street, Second Floor
   San Francisco, CA  94104
3  Facsimile: (415) 397-0862
   Telephone: (4l5) 397-0860
4
   Attorney for Defendant
5  ORVELLE ROBINSON

6

7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,         )   No.  C-07-0310 MHP
                                     )
11         Plaintiff,                )   **MEMORANDUM OF POINTS**
                                     )   **AND AUTHORITIES IN REPLY**
12     vs.                           )   **TO GOVERNMENT'S OPPOSITION**
                                     )   **TO MOTION TO SUPPRESS**
13 ORVELLE ROBINSON,                 )   **EVIDENCE UNDER THE FOURTH**
                                     )   **AMENDMENT**
14         Defendant.                )
   _____)   DATE: January 28, 2008
15                                       TIME:   10:00 a.m.
                                         CTRM: 15, 18th Floor,
16                                             Hon. Marilyn Hall Patel

17                           **I.**

18              **MEDICAL EMERGENCY NOT PROVEN**

19     The government contends that Officer Primiano's search of the jacket was justified

20 based on a medical emergency. Government's Memorandum in Opposition (Opp.), pp. 7-9.

21     The flaw in this argument is that no evidence is presented that Primiano's search of the

22 jacket was necessitated by or in any way related to the emergency need to render medical care

23 to Defendant or anyone else. In fact the jacket was searched *after* Defendant was removed

24 from the scene by ambulance, so the medical personnel who responded to the scene certainly

25 did not need the contents of the jacket to provide medical assistance to Defendant, nor is there

26 any showing that medical personnel at the Hospital needed to know the contents of the jacket

27 in order to render medical aid to him there.

28     In fact, Primiano searched the jacket at the behest of Sgt. Ewins *solely* to locate keys

or identification information. Government's Exhibit D. And she did this prior to arrival at the scene of the Crime Scene Investigators. *Id.* Second, nothing is submitted to show that the officers did not already have Defendant's identification, thus searching the jacket for identification was unnecessary. Moreover, since one of Officer Primiano's objectives in searching the jacket *was* to locate evidence, namely keys and Defendant's identity, the emergency doctrine fails. *United States* v. *Cervantes*, 219 F.3d 882, 888-90 (9th Cir. 2000).

Therefore, the government fails to substantiate their claim that the officers had an emergency *medical need* to search the jacket at the scene under the emergency doctrine exception to the warrant requirement of the Fourth Amendment.

## II.

## ILLEGAL INVENTORY SEARCH

The government then argues that Primiano's search was justified as an inventory search. Opp., 9-11.

First, Primiano searched the jacket *not* to inventory its contents, but instead to search for keys and Defendant's identity. Indeed, nothing is presented to show that she intended to take possession and custody of the jacket for evidence, to protect it against theft or to return it to Defendant at the hospital or afterward. No showing is made that the jacket could not have been simply left at the scene. Since the jacket was never "properly in police custody," there was no reason to fear potential future claims of theft against the police. *Id.*, 10:21-22.

Second, the government's attempt to justify an inventory search on the basis that the jacket was "evidence of a crime" fails, because no showing is made that it was in any way of evidence of any crime, given that *Defendant* was the victim of a shooting and not a suspect in crime. *Id.*, 10:21. Third, an inventory search is not justified when the item searched is "property of a victim," as the government states. *Ibid.*

Lastly, the government fails to present evidence of standardized criteria employed by the Police Department to limit officer discretion to conduct inventory searches and avoid conducting such searches in *every* case. *Florida* v. *Wells*, 495 U.S. 1, 2 (1990). Opp., 9-11. Absent is any testimony about criteria adopted by the Police Department to regulate and

1 govern officer discretion to conduct an *inventory search*.

2 Therefore, the government fails to meet their burden to prove that Primiano's search
3 of the jacket is justified as an exception to the warrant requirement of the Fourth Amendment
4 as a legitimate and legal inventory search.

### III.

### JACKET COULD NOT BE SEIZED UNDER *PLAIN VIEW* DOCTRINE

7 Law enforcement agents are entitled to seize articles that are in plain view, but "the
8 incriminatory nature of the evidence must be immediately apparent." *Roe* v. *Sherry*, 91 F.3d
9 1270, 1272 (9th Cir. 1996).

10 The government fails to meet their burden to present evidence that the incriminatory
11 nature of the jacket was immediately apparent. None of the officers whose reports the
12 government attaches in Exhibits A-E state that s/he believed the jacket or its contents were
13 incriminatory of any crime committed by Defendant or anyone. In fact, Primiano searched
14 the jacket *solely* to locate identification information and keys. Government's Exhibit D. And
15 she did this before the Crime Scene Investigators arrived. *Id.*

16 Moreover, even if the jacket was properly seized under this exception, the officers
17 would still be required to secure a search warrant to examine its interior pockets. That is, the
18 *contents* of the jacket were not in plain view and incriminatory in nature, nor does the
19 government present any evidence to support this notion.

20 Therefore, the government fails to present sufficient evidence to justify the "plain
21 view" exception to the warrant requirement.

### IV.

### DEFENDANT HAS SATISFIED *FRANKS* THRESHOLD

24 The affiant, Officer Benzinger, declared under oath that Defendant was on federal
25 probation. The government concedes that Defendant was *not* on federal probation, but they
26 attribute the misstatement to a mistake on the basis that after Defendant's arrest at the hospital
27 Officer Luedtke found an identification card from the Bureau of Prisons in Defendant's wallet
28 and then informed Sgt. Ewins. Luedtke Dec., ¶ 4.

1    First, Luedtke's search of Defendant's wallet violated his Fourth Amendment rights.[1/]
2 Second, there is no showing that Luedtke or Ewins conveyed the information to the affiant.
3 Third, there is no showing what the BOP identification card meant, e.g., that the person was
4 then or previously on probation, under supervised release, or what. Fourth, even if the card
5 reflected a probationary status for Defendant *at some point in time*, the government fails to
6 show that it meant *current* probationary status, and unless Defendant was *then* on probation,
7 Benzinger's statement was false.

8    Fifth, Benzinger was under an affirmative law enforcement duty to check the readily
9 accessible criminal history data bases to determine if Defendant in fact was then on federal
10 probation.[2/] Benzinger was able to conduct DMV computer checks on Defendant and Sarah
11 Quarles and a criminal history check Ms. Quarles for convictions and references to her in
12 police reports — why not Defendant's criminal history and his probationary status?

13    The availability to law enforcement officers of such criminal history and other
14 information is common knowledge and permits access by state law enforcement officers to
15 extensive criminal history information for both state and federal arrests, cases and convictions,
16 via computer stored updated information and databases reflecting whether individuals are on
17 probation, parole, their arrests, convictions, etc.[3/]

18    Benzinger was duty bound to check the available data bases to determine whether in
19 fact Defendant was on federal probation before he swore to the truth of such a fact, and failing

---

[1/] Defendant did not know that Officer Luedtke searched Defendant's wallet at the hospital until the government submitted his Declaration on January 10, 2008. Docket No. 41. Therefore, Defendant now moves to suppress the BOP identification card that he found. See Section V below. Defendant requests leave of Court to include this argument in his Motion to Suppress.

[2/] Benzinger states that Defendant "is subject to search by his federal probation officer." Rotwein Dec., Exhibit A, Affidavit, page 2 (top), #ORBN0041. If Benzinger truly believed Defendant was on federal probation and had a search condition, it is highly doubtful that he would have sought a search warrant instead of the much easier probation search route. That he did not contact Defendant's probation officer for a probation search strongly suggests that he knew or certainly suspected that there was no federal probation.

[3/] See Declaration of Geoffrey Rotwein submitted separately herewith.

such, was at least guilty of blatant recklessness and at worst intentional bad faith inclusion of this fact in the Affidavit.

Under either scenario, Defendant has satisfied his threshold burden showing entitlement to a *Franks* evidentiary hearing to determine whether Benzinger and/or the other officers acted with reckless disregard for the truth or in bad faith, and if so, then to a reweighing of the Affidavit without the information.

## V.

### SEARCH OF DEFENDANT'S WALLET WAS ILLEGAL

The search by Officer Luedtke of Defendant's wallet at the hospital without a warrant violated the Fourth Amendment since there was no exception that justified such search. Therefore, the BOP identification card was illegally seized and the information gleaned therefrom should be suppressed and excised from the Affidavit.

## VI.

### SEARCH WARRANT DEFICIENT IN PROBABLE CAUSE AFTER EXCISING IMPROPER EVIDENCE

The government argues that there is sufficient probable cause in the Affidavit for the Search Warrant after excising the incorrect information that Defendant was on probation. Opp., p. 7. If the federal probation information is excised, then the remaining statement that Defendant "is not likely to give his real address to the government" must also be excised. Affidavit, #ORBN0041, top.

Tellingly, the government does not address whether the Affidavit survives after excising the information that Defendant possessed narcotics for sale that came from the illegal search of his jacket, which is tantamount to a concession that it does not.

Defendant again argues that the Affidavit fails to show probable cause to search the residence after deleting the illegally seized evidence and the improperly included *Franks* information.

///

///

REPLY MEMORANDUM OF POINTS AND
AUTHORITIES RE MOTION TO SUPPRESS EVIDENCE
No. C-070310 MHP                        -5-

## VII.

## CONCLUSION

Based on the submitted evidence, the briefing by the parties and argument, Defendant requests that the evidence identified in his Motion be suppressed.

DATED: January 13, 2008                Respectfully submitted:

   /s/ Geoffrey Rotwein
GEOFFREY ROTWEIN
Attorney for Defendant
ORVELLE ROBINSON